**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Nathan Scott Peterson |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Virginia (State) |
| Case number | 22-32237-KRH |

Official Form 427

# Cover Sheet for Reaffirmation Agreement 12/15

Anyone who is party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
Harley-Davidson Credit Corp
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed    $ 17,595.74
To be paid under the reaffirmation agreement    $ 17,595.74
$409.41 per month for 57 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed    10.9900%
Under the reaffirmation agreement    10.9900%    ☒ Fixed rate    ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☒ Yes. Describe the collateral. 2020 HARLEY-DAVIDSON FLTRX ROAD GLIDE, VIN: 1HD1KHC13LB642026
Current market value    $ 24,380.00

**5. Does the creditor assert that the debt is nondischargeable?**
☒ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedule I and J

6a. Combined monthly income from line 12 of Schedule I    $ 3,973.50
6b. Monthly expenses from line 22c of Schedule J    – $ 4,059.48
6c. Monthly payments on all reaffirmed debts not listed on Schedule J    – $ 0
6d. **Scheduled net monthly income**    $ (85.98)
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources after payroll deductions    $ 3,973.50
6f. Monthly expenses    – $ 4,059.48
6g. Monthly payments on all reaffirmed debts not included in monthly expenses    – $ 0
6h. **Present net monthly income**    $ (85.98)
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

| Debtor 1 | Nathan | Scott | Peterson | Case number (if known) | 22-32237-KRH |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | | |
|---|---|---|---|
| 7. | Are the income amounts on lines 6a and 6e different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 8. | Are the expense amounts on lines 6b and 6f different? | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 9. | Is the net monthly income in line 6h less than 0? | ☐ No<br>☒ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>**Debtor will get help from family.** |
| 10. | Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _/signature/_____     ✗ _____<br>Signature of Debtor 1     Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. | Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☒ Yes. | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☒ No<br>☐ Yes |

## Part 2: Sign Here

| | |
|---|---|
| Whoever fills out this form must sign here. | I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.<br><br>✗ /s/ *Kiana Witcher*     Date **10/05/2022**<br>Signature     MM / DD / YYYY<br><br>Kiana Witcher<br>Printed Name<br><br>14841 Dallas Parkway, Suite 425<br>Dallas, Texas 75254<br>(972) 643-6600<br>(972) 643-6698<br>E-mail: consumer7@nationalbankruptcy.com<br><br>Check one:<br>☐ Debtor or Debtor's Attorney<br>☐ Creditor or Creditor's Attorney<br>☒ Creditor's Authorized Agent |

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                    1

☒ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**

*(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)*

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA

In re:   Nathan Scott Peterson             Case No. 22-32237-KRH
              Debtor                              Chapter 7

### REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1-5)     ☒ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☒ Part B: Reaffirmation Agreement     ☐ Part E: Motion for Court Approval

☒ Part C: Certification by Debtor's Attorney

[***Note:*** *Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement.*  ***Note also:*** *If you complete Part E, you must prepare and file Form 2400C ALT- Order on Reaffirmation Agreement.]*

**Name of Creditor:  Harley-Davidson Credit Corp**

☐ *[Check this box if]* Creditor is a Credit Union as defined in § 19(b)(1)(a)(iv) of the Federal Reserve Act

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

1.     **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures*:

**SUMMARY OF REAFFIRMATION AGREEMENT**
     This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

     The amount of debt you have agreed to reaffirm:               $17,595.74

     *The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

1                                                              3908-N-1602

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                                 2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: ____%.

    --- And/Or ---

    (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

    b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 10.99%.

    --- And/Or ---

    (ii)   The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

3908-N-1602

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                                                     3

the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2020 HARLEY-DAVIDSON FLTRX ROAD GLIDE | $23,918.03 |

VIN: 1HD1KHC13LB642026

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $409.41 is due on September 27, 2022, but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*— Or —*

Your payment schedule will be: ____ (number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ (week, month, etc.), unless altered later by mutual agreement in writing.

*— Or —*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

3908-N-1602

B2400A/B ALT (Form 2400A/B ALT) (12/15) 4

### 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

3908-N-1602

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                                                    5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

B2400A/B ALT (Form 2400A/B ALT) (12/15) 6

**PART B: REAFFIRMATION AGREEMENT.**

I (We) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

   | | |
   |---|---|
   | Item: | 2020 HARLEY-DAVIDSON FLTRX ROAD GLIDE , VIN: 1HD1KHC13LB642026 |
   | Amount Reaffirmed: | $17,595.74 |
   | Interest Rate | 10.99% |
   | Payment Amount: | $409.41 |
   | Maturity Date | May 27, 2027 |

   **\*On the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable.**

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:
   _____
   _____

SIGNATURE(S):

| Borrower: | Accepted by creditor: |
|---|---|
| Nathan Scott Peterson | Harley-Davidson Credit Corp |
| (Print Name) | (Printed Name of Creditor) |
| [signature] | 14841 Dallas Parkway, Suite 425 |
| (Signature) | Dallas, Texas 75254 |
| | (972) 643-6600 |
| | (972) 643-6698 |
| Date: 10 / 01 / 2022 | Email: consumer7@nationalbankruptcy.com |
| | (Address of Creditor) |
| Co-borrower, if also reaffirming these debts: | /s/ *Kiana Witcher* |
| | (Signature) |
| (Print Name) | Kiana Witcher      Authorized Agent for Creditor |
| | (Printed Name and Title of Individual Signing for Creditor) |
| (Signature) | |
| Date: _____ | Date of creditor acceptance: 10/05/2022 |

3908-N-1602

B2400A/B ALT (Form 2400A/B ALT) (12/15) 7

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)**.

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☒ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. I cannot certify that the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:    Stephen L. Flores

Signature of Debtor's Attorney:    /s/ Stephen L. Flores

Date: 10/3/2022

B2400A/B ALT (Form 2400A/B ALT) (12/15) 8

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I (We) believe this reaffirmation agreement will not impose an undue hardship on my (our) dependents or me (us). I (We) can afford to make the payments on the reaffirmed debt because my (our) monthly income (take home pay plus any other income received) is $3,973.50, and my (our) actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $4,059.48, leaving ($85.98) to make the required payments on this reaffirmed debt. **Creditor payment included in Schedule J.**

I (We) understand that if my (our) income less my (our) monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me (us) and must be reviewed by the court. However, this presumption may be overcome if I (we) explain to the satisfaction of the court how I (we) can afford to make the payments here: I will get help from family.

**(Use an additional page if needed for a full explanation.)**

2. I (We) received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
Nathan Scott Peterson

Date: 10 / 01 / 2022

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I (We) believe this reaffirmation agreement is in my (our) financial interest. I (We) can afford to make the payments on the reaffirmed debt. I (We) received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
Nathan Scott Peterson

Date: _____

3908-N-1602

**Eaglemark Savings Bank**  A subsidiary of Harley-Davidson Credit Corp.

# PROMISSORY NOTE (SIMPLE INTEREST) AND SECURITY AGREEMENT ("CONTRACT")

| BORROWER Name and Mailing Address | CO-BORROWER Name and Mailing Address | LENDER Name and Address |
|---|---|---|
| NATHAN SCOTT PETERSON | MEAGHAN KAY MACDONALD | Eaglemark Savings Bank<br>P.O. Box 22048<br>Carson City, NV 89721-2048 |

**Definitions.** The words "You" and "Your" mean the Borrower/Co-Borrower(s) who sign(s) below. The words "ESB" "Lender" "We" "Us" and "Our" mean Eaglemark Savings Bank, its successors and assigns. The word "Contract" means this Promissory Note and Security Agreement. The word "Vehicle" means the motorcycle and/or motor vehicle, described more fully below.
**Promise to Pay.** You promise to pay to Lender the Amounts Financed plus interest figured on a daily basis on the unpaid balance as set forth in this Contract and in the Truth In Lending Disclosures set forth below, together with all fees and expenses set forth in this Contract, until all amounts are paid in full.
**Payment Deferral.** Any deferral will continue to accrue interest during the deferral period.
**Where Applicable Finance Charges** will not accrue for the first ___N/A___ days of this Contract ("No Finance Charge" period).

## DESCRIPTION OF PURCHASE

| MAKE | YEAR | NEW/USED | MODEL | COLOR | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|
| HARLEY-DAVIDSON | 2020 | New | FLTRX ROAD GLIDE | BLACK | 1HD1KHC13LB642026 |

Description of the body and major items of equipment sold.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. (Estimate) | AMOUNT FINANCED<br>The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS<br>The amount You will have paid after You have made all payments as scheduled. (Estimate) |
|---|---|---|---|
| 10.99 % | $ 10,472.41 | $ 23,918.03 | $ 34,390.44 |

### Your Payment Schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | AND AS FOLLOWS: |
|---|---|---|---|
| 84 | $ 409.41 | Monthly Beginning: 06/27/2020 | Until Paid In Full |
| N/A | $ 0.00 | Monthly Beginning: N/A | N/A |

**Prepayment:** If You pay off all Your debt early, You *will not* have to pay a prepayment premium or penalty.
**Security Interest:** You are giving a security interest in the goods or property being purchased. Any of Your property securing Your other obligations to Lender also secures Your obligation under this Contract.
**Late Charge:** If any payment is more than ten (10) days late, You will be charged up to $25 or 10% of the late amount, whichever is greater, with a maximum of $50.
**Additional Information:** See Other Important Agreements, pages 3, 4 and 5, of this Contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1. | Amount Given to You Directly | $ | N/A (1) |
| 2. | Amount Paid on Your Account | $ | N/A (2) |
| 3. | Amount Paid to Others on Your Behalf | | |
| A. | To (Dealer Name & No.): OLONIAL HARLEY-DAVIDSON | $ | 18,556.02 (A) |
| B. | Cost of Required Physical Damage Insurance paid to insurance company* | $ | 0.00 (B) |
| C. | Cost of Optional Service Contract*<br>To: H-D ESP w/ TW | $ | 2,224.00 (C) |
| D. | Cost of Optional Tire & Wheel Protection*<br>To: | $ | 0.00 (D) |
| E. | Cost of Optional Credit Life and/or Disability Insurance paid to insurance company* | $ | 0.00 (E) |
| F. | Cost of Optional Planned Maintenance*<br>To: | $ | 0.00 (F) |
| G. | Cost of Optional Theft Protection*<br>To: | $ | 0.00 (G) |
| H. | Cost of Optional Appearance Protection*<br>To: | $ | 0.00 (H) |
| I. | Cost of Optional GAP Addendum*<br>To: Allstate | $ | 699.00 (I) |
| J. | Government license and/or registration fees paid to public officials (describe):<br>Gov/Lic Fee | $ | 45.75 (J) |
| K. | Government Certificate of Title Fees paid to public officials | $ | 15.00 (K) |
| L. | Taxes (describe):<br>$^1$To: STATE OF VA   For: Total Taxes<br>$^2$To:   For: | $<br>$ | 1,094.26 (L$^1$)<br>0.00 (L$^2$) |
| M. | Other charges* (identify who will receive payment and describe):<br>$^1$To: Dealer   For: Doc/Admin Fee<br>$^2$To: Dealer   For: Freight & Set Up<br>$^3$To:   For:<br>$^4$To:   For:<br>$^5$To:   For: | $<br>$<br>$<br>$<br>$ | 250.00 (M$^1$)<br>1,034.00 (M$^2$)<br>0.00 (M$^3$)<br>0.00 (M$^4$)<br>0.00 (M$^5$) |
| | Total Amount Paid to Others on Your Behalf (add A thru M$^5$) | $ | 23,918.03 (3) |
| 4. | Amount Financed (1+2+3) | $ | 23,918.03 (4) |

* Dealer/Seller and/or Lender and/or Others may retain, or receive, a portion of these amounts. You authorize the disbursement of funds as itemized above; with the exception of 3B, it is the Dealer's obligation to remit any funds itemized in Section 1, 2 and 3 above. You acknowledge that any down payment made to Dealer may also be used to pay, in whole or part, anything itemized above in Sections 1, 2 and 3.

1 of 5

## INSURANCE AND OPTIONAL PRODUCTS

**NOTICE:** No person is required, as a condition of obtaining this loan, to purchase Credit Life and/or Disability Insurance, Tire and Wheel, Planned Maintenance, Theft Protection, Appearance Protection, Service Contracts, or GAP Addendum, or to purchase, or negotiate, any insurance through a particular insurance company, agent or broker.

**OPTIONAL GAP Addendum.** If You choose to buy and finance a GAP Addendum, the cost is shown in item 3I of the ITEMIZATION OF AMOUNT FINANCED section. GAP is based upon the Payment Schedule and term shown above. This protection may not pay all You owe on this Contract if You make late payments. See Your GAP addendum for details on the protection it provides.

**Required Physical Damage Insurance.** Physical damage insurance is required, but You may obtain it from anyone You want who is reasonably acceptable to Lender through an existing policy of insurance owned or controlled by You, or through a policy You obtain from an insurer authorized to do business in Your state. If You choose to buy and finance this insurance through Lender, the cost of this insurance is shown in item 3B of the ITEMIZATION OF AMOUNT FINANCED section and You agree that the cost may be included in the Amount Financed under this Contract.

Insurance Company: __HARLEY DAVIDSON__
Telephone Number: _____
Term: __0__ Months
$ __1,000.00__ Deductible Collision and
$ __1,000.00__ Deductible Comprehensive (includes Fire, Theft and Combined Additional Coverage)

**OPTIONAL Credit Life and/or Disability Insurance, GAP Addendum (Waiver).** Credit life and credit disability insurance, GAP Addendum are not required to obtain credit and will not be provided unless You sign for them and agree to pay the additional cost. Acknowledge by signing below. If You have chosen any of these protections, the cost is shown below. Please refer to the separate agreement for any chosen program for details on the protection it provides. No insurance will be in force until accepted by the product provider.

| Type | Cost | Signature (To purchase) | Decline to Purchase (Initials) |
|---|---|---|---|
| Credit Life (Borrower/Co-Borrower) | $ 0.00 | I/we want Credit Life<br>X_____ Borrower<br>X_____ Co-Borrower | X_____ Borrower<br>X_____ Co-Borrower |
| Credit Life & Disability (Borrower/Co-Borrower) | $ 0.00 | I/we want Credit Life and Disability<br>X_____ Borrower<br>X_____ Co-Borrower | X _NSP_ Borrower<br>X _MKM_ Co-Borrower |
| Credit Disability (Borrower/Co-Borrower) | $ 0.00 | I/we want Credit Disability<br>X_____ Borrower<br>X_____ Co-Borrower | X_____ Borrower<br>X_____ Co-Borrower |
| GAP Addendum (Borrower only) | $ 699.00 | I want GAP Addendum<br>X _NATHAN SCOTT PETERSON_ Borrower | Borrower |

**OPTIONAL Protection Products and Service Contracts.** If You choose to buy and finance other OPTIONAL products or services the cost of coverage is shown in Section 3 of the ITEMIZATION OF AMOUNT FINANCED, specifically 3C for a Service Contract, 3D for Tire/Wheel, 3F for Planned Maintenance, 3G for Theft Protection, 3H for Appearance Protection, and 3M for Other. See Your protection/service contract(s) for details on the protection/service it provides.

**OPTIONAL Credit Life and/or Disability Insurance.** If You have chosen this protection, and if You finance this protection, the cost is shown in item 3E of the ITEMIZATION OF AMOUNT FINANCED section. Credit life insurance is based upon the Payment Schedule and term shown above. This protection may not pay all You owe on this Contract if You make late payments. Disability protection covers the original payment amount of the term shown in the TRUTH IN LENDING DISCLOSURES above. If You make late payments, disability protection will not pay all of Your payments. Please refer to the separate agreement for any chosen program for details on the protection it provides.

THE INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS. **You hereby consent to the use or sharing of any insurance coverage information obtained as part of the loan process in the marketing of insurance.**

### IMPORTANT SIGNATURES AND NOTICES

**NOTICE TO CONSUMER:** By signing below, You agree to the terms of this Contract and agree that the provisions located on pages 3, 4, and 5 shall constitute a part of, and shall be incorporated into, this Contract.

**DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COMPLETED COPY OF THIS CONTRACT. IF YOU FAIL TO PERFORM YOUR OBLIGATIONS UNDER THIS CONTRACT, THE COLLATERAL MAY BE REPOSSESSED AND YOU MAY BE LIABLE FOR THE UNPAID INDEBTEDNESS EVIDENCED BY THIS CONTRACT.**

YOU SIGNED THIS CONTRACT AND RECEIVED A COPY ON __May__ (Month) __28__ (Day) __2020__ (Year)

THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIATED WITH THE DEALERSHIP THAT SOLD YOU THE VEHICLE. WE MAY SHARE PART OF THE FINANCE CHARGE WITH THE DEALERSHIP THAT SOLD YOU THE VEHICLE.

**The Borrower/Co-Borrower** are each jointly and severally liable for the entire obligation arising under this Contract.

The **Co-Borrower** (if applicable) knows that Lender has a security interest in the property purchased in this Contract and consents to the security interest.

**NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

Federal regulations require Us to notify You that We may report information about Your account to credit bureaus. Late payments, missed payments or other defaults on Your account may be reflected in Your credit report.

**BORROWER** signs below
By: X _NATHAN SCOTT PETERSON_
Print name __NATHAN SCOTT PETERSON__

**CO-BORROWER** signs below
By: X _MEAGHAN KAY MACDONALD_
Print name __MEAGHAN KAY MACDONALD__

**TITLE AND REGISTRATION PROCESSING:** Input the following name and address on the title documents:
Eaglemark Savings Bank
P.O. Box 277940
Sacramento, CA 95827

## OTHER IMPORTANT AGREEMENTS

**1. Finance Charge.** Starting on the date of this Contract, the Finance Charge accrues on a daily basis at a rate that is based on the Annual Percentage Rate disclosed on page one of this Contract.

**2. Application of Payments.** Lender will apply your payments to the Finance Charges, the unpaid balance of the Amount Financed, Expenses, and Fees, in that order. Unless otherwise required by applicable law, payments will be applied to any past due amounts on the account before being used to satisfy any monthly payment amount. Any amount received in excess of any past due amounts and current Total Amount Due, including monthly payment amount and Fees and Expenses, will be applied to the unpaid balance of the Amount Financed.

**3. Late Payments and Early Payments.** The disclosures of the Finance Charge and Total of Payments are based on the assumption that You will make every payment on time and assuming each year has 365 days and each month has 30 days, according to the Payment Schedule. Since the Finance Charge accrues daily, You will pay more Finance Charge and Your Finance Charge and Total of Payments will be more if You pay late. You will pay less Finance Charge and Your Finance Charge and Total of Payments will be less if You pay early. If You pay early, the effect will be that Your final payment will be smaller. If You pay late, Your final payment may be larger or You may have one or more additional payments. Unless specifically prohibited by applicable law, the remaining balance shall be due and payable no later than the last scheduled payment.

**4. Payment Deferral.** If You meet the requirements and are granted an extension of one or more monthly payments, You understand that any deferral will continue to accrue interest on the unpaid principal balance during the deferral period.

**5. Ownership and Risk of Loss.** You agree to pay Lender all You owe under this Contract and under the original schedule, even if the Vehicle is damaged, destroyed, stolen or missing. You agree to keep the Vehicle in good condition or repair. You agree to use the Vehicle for personal use only, not to remove the Vehicle from the United States, and not to sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without Lender's written permission. You agree to notify Us of any change in Your address or the location of the Vehicle. You agree to protect the Vehicle from claims of third persons. You agree not to expose the Vehicle to misuse or confiscation. You will make sure Lender's security interest (lien on) the Vehicle is shown on the title, or on other documentation acceptable to Lender. You aagree to provide all materials and take action as Lender may request at any time to protect or enforce its rights in the Vehicle and other collateral. You will not do anything to defeat Lender's lien. If Lender pays any repair bills, storage bills, taxes, fines, or other charges on the Vehicle, You agree to repay the amount when Lender asks for it unless specifically prohibited by law.

**6. Security Interest.** You grant Lender a purchase money security interest in the Vehicle specified on page one of this Contract and any of the following that are purchased and financed in connection with this Contract: (1) any accessories, equipment, and replacement parts installed on the Vehicle; (2) any insurance premiums and charges for service or GAP addendum returned to Lender; (3) any proceeds of insurance policies, service or GAP addendum on the Vehicle; and (4) any proceeds of insurance policies on Your life or health which are financed through this Contract. This purchase money security interest is in addition to any other security interest or lien Lender holds, or which You are required to provide as a condition of this Contract. The Vehicle and all other property subject to a security interest or lien in Lender's favor is called the "Collateral". The Collateral secures payment of all amounts You owe on the Contract and on any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by applicable law, the Collateral under this Contract also secures Your other obligations to Lender, whether now owing or incurred after the date of this Contract.

**7. Prepayment.** You may prepay the unpaid balance of the Amount Financed in full or in part at any time without penalty. If You do so, You must first pay the earned and unpaid part of the Finance Charge before paying for the unpaid balance of the Amount Financed and all other amounts due up to the date of payment.

**8. Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the duration of this Contract, **showing Lender (and its successors and assigns) as "additional insured and loss payee." Unless You provide Lender with evidence of the insurance coverage required by this Contract, Lender may purchase insurance at Your expense to protect Lender's interests in Your Vehicle.** This insurance may, but need not, protect Your interests. The coverage Lender purchases may not pay any claim that You make or any claim that is made against You in connection with the Vehicle. You may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that You have obtained insurance as required by the Contract. **If Lender purchases insurance for the Vehicle, You will be responsible for the costs of that insurance until the effective date of the cancellation or expiration of the insurance.** The costs of insurance will consist of the actual cost of the insurance plus a Finance Charge, at a rate that is based on the Annual Percentage Rate in this Contract, subject to limits under applicable laws. The costs of the insurance may be more than the cost of insurance You may be able to obtain on Your own.

**9. Late Charge.** You will have to pay a late charge on each monthly payment received by Lender more than ten (10) days late according to the Payment Schedule. The charge is shown on page one of this Contract. Acceptance of a late payment or late charge does not excuse Your late payment or mean that You can keep making payments after they are due. Lender may also take the steps set forth in the other applicable sections of this Contract if there is any late payment.

**10. Dishonored Check Charge.** For the return of a dishonored check/ACH, negotiable order of withdrawal or share draft issued in connection with any payment due under this Contract, Lender may charge You a Fee of up to $50, plus any charges assessed by Lender's depository institution.

**11. Convenience Fees.** You may incur convenience fees and other charges from Lender, Your own bank, or a service provider as a result of the method You choose to make Your payments. Unless specifically prohibited by applicable law, You agree that You are responsible for paying these charges, as applicable, and acknowledge that these are convenience fees related to Your choice of an expedited method of payment. To the extent permitted by law, Lender or a third party who contracts with Lender may charge up to $12 per payment made over the phone and up to $6 per payment made via the internet or mobile devices. You expressly consent to Lender contracting with third party payment processors to share in these fees. You may sign up for recurring payments through myhdfs.com for no additional charge and may send physical payments via check to Lender's lockbox for no additional charge other than postage or shipping charges.

**12. Optional Protection Products or Service Contracts.** This Contract may contain charges for optional protection products or service contracts such as extended service, planned maintenance, or GAP addendum. If You breach this Contract, You agree that Lender may claim benefits under these agreements and terminate them to obtain refunds of unearned charges. In the event You pay off Your loan early, please contact the selling Dealer or the administrator of the protection products you purchased to discuss whether you may be eligible for a refund of any unearned protection product fee.

**13. Insurance, Service Contract and GAP Addendum Refunds Received by Lender.** Any refund on optional protection products or service contract will be credited to Your account. This will not excuse You from making payments in accordance with the Payment Schedule on page one of this Contract.

**14. Default; Required Payment in Full Before Scheduled Date.** If You fail to pay any payment when due and/or pay less than the amount owed; if the likelihood of You performing the obligations under this Contract significantly decrease or if Lender's likelihood of collecting on the Vehicle significantly decrease, including if You die or are declared legally incompetent; if a proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property; or if You break any of the agreements in this Contract (Default), Lender can demand that You pay in full either 1) all past due payments, or 2) all You owe on this Contract **at once** (not just past due payments), together with all costs and expenses incurred by Lender. After Default, interest will continue to accrue on a daily basis at a rate that is based on the Annual Percentage Rate shown on page one of this Contract.

Only if You reside in CO, CT, DC, FL, GA, IA, KS, ME, MD, MA, MN, MO, NE, NV, OR, RI, SC, SD, TN, TX, WV, or WI AND You and Your account are eligible to cure Your payment Default under the laws of that state (some cure states place limits on how often You may cure Your payment Default within a specified time or during the term of Your obligation), Lender will provide notice and You will have an opportunity to cure Your payment Default by paying the unpaid past due payments plus the earned and unpaid part of the Finance Charge, any subsequent charges, and any amounts due because You did not keep Contract promises.

**15. Repossession of Vehicle for Default of Contract.** Repossession means that (1) if You fail to pay according to the Payment Schedule or (2) if You fail to cure Your payment Default in those states where Lender may not take Your Vehicle until You are given notice and the right to cure Your payment Default, or (3) if You otherwise Default, Lender can, where permitted by applicable laws, take the Vehicle from You with or without resort to judicial process. To take the Vehicle Lender can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and does not otherwise violate Your state law. If there is any personal property in or on the Vehicle, such as clothing, Lender may store it for You. Any accessories, equipment or replacement parts will remain with the Vehicle. If repossession action is started, and You cure Your payment Default prior to repossession, You agree that Lender can charge actual and reasonable expenses incurred by it, unless specifically prohibited by applicable laws.

**Connected Vehicle System Information. If the Vehicle has technology that provides cellular and GPS connectivity ("Connected Vehicle"), You agree that Lender may access the location of the Vehicle for Lender's servicing and collection purposes, including, subject to any prior notice and right to cure You have under applicable law, finding the Vehicle for repossession.** If the Vehicle is repossessed, Lender may access Connected Vehicle information including mileage, impact data, repair history, use of the vehicle by state, driving behavior for valuation purposes and to determine whether the Vehicle needs repairs or other services. Lender may also use the kinds of connected Vehicle information described above to help Lender confirm You are complying with Your obligations under this Contract.

## OTHER IMPORTANT AGREEMENTS (Continued)

**If You reside in the State of Louisiana—Confession of Judgment—Seizure and Sale of Vehicle for Failure to Pay.** If You reside in the State of Louisiana, We may choose to institute executory, ordinary, or other legal proceedings to recover the Vehicle. For the purpose of permitting Lender to employ executory proceedings in the State of Louisiana, You do hereby acknowledge Your obligation under this Contract and **CONFESS JUDGMENT** in favor of Lender or any holder of this Contract if Your obligation is not paid in full or You Default under this Contract. You agree that if You fail to pay according to the Payment Schedule or othrewise Default under this Contract, then the entire unpaid balance due on this Contract shall immediately become due and payable at the option of Lender without necessity of any notice, demand or placing in Default. If this happens, Lender may cause the Vehicle to be seized and sold under executory or other legal process in any court of competent jurisdiction in this state, to the highest bidder, payable in cash. You agree to waive notice, and the benefit of appraisal, and other related rights under Louisiana Code of Civil Procedure Articles 2332, 2336, 2723, 2724.The provisions of this section regarding Your confession of judgment shall apply only if this Contract is enforced in the courts of the State of Louisiana.

Your rights following seizure of the vehicle will be determined by applicable law.

You agree that Lender may appoint a keeper of the Vehicle under La. Rev. Stat. 9:5136 to 9:5140.2 et seq. if the Vehicle is taken from You through legal proceedings. You and Lender agree to appoint Harley-Davidson Credit Corp. or its designee as the keeper or receiver of the Vehicle. The appointment will take effect, at the option of Lender, immediately upon any seizure that is incident to any action Lender may bring to enforce this Contract.

**16. Getting the Vehicle Back After Repossession.** If Lender repossesses the Vehicle, You may have the right to get it back. Only if You reside in CA, CT, IL, MD, MS, NY, or RI AND You and Your account are eligible for reinstatement under the laws of that state (some reinstatement states place limits on how often you may reinstate Your Contract after repossession of the Vehicle), You may get the Vehicle back by paying the unpaid past due payments plus the earned and unpaid part of the Finance Charge and all other amounts due, including the cost of retaking, holding, preparing for disposition, processing, and disposing of the Vehicle, unless specifically prohibited by law.

You may redeem the Vehicle by paying the ***entire amount You owe*** on the Contract (not just past due payments). The amount You owe will be the entire unpaid balance of the Amount Financed plus the earned and unpaid part of the Finance Charge and all other amounts due, including the cost of retaking, holding, preparing for disposition, processing, and disposing of the Vehicle unless specifically prohibited by law. Your right to redeem will end when either (1) a contract for the sale, lease or other disposition has been entered into by Lender; (2) Lender has disposed of the Vehicle; or (3) Lender has agreed to accept the Vehicle in satisfaction of the obligation.

**17. Sale of the Repossessed Vehicle.** Before selling the Vehicle, Lender will mail a written notice of sale as mandated by applicable state law. If You do not redeem the Vehicle, reinstate Your contract, or cure Your payment Default (whichever is applicable) by the date on the notice, Lender can sell it. Lender will use the net proceeds of the sale to pay all or part of Your debt. To calculate the amount You owe after the sale, Lender will subtract the net proceeds of the sale or fair market value, where specifically required by law, from the balance of Your debt.

Unless specifically prohibited by applicable laws, the net proceeds of sale will be prioritized to apply in this order: Any subsequent charges and any cost for retaking, holding, preparing for disposition, processing, and disposing of the Vehicle, and either a portion, or all, of attorney's fees and court costs will be subtracted from the selling price.

If You owe Lender less than the net proceeds of sale, Lender will pay You the difference, unless Lender is required to pay it to someone else.

If You owe more than the net proceeds of the sale, You will be liable for payment to Lender of the difference between the net proceeds of the sale and what You owe (deficiency balance) when Lender asks for it, unless prohibited by state laws. If You do not pay this amount when asked, You may also be charged interest on the deficiency balance at a rate that is based on the Annual Percentage Rate in this Contract, subject to limits under applicable laws, until You do pay all You owe to Lender.

**18. Collection Costs.** After Default, You agree that Lender can charge actual and reasonable expenses incurred by it in attempting to protect Our security interest and/or collect the debt owed by You, locate You and/or the Co-Borrower and/or locate the Vehicle, unless specifically prohibited by applicable law. In the event that Your obligation is referred to an attorney who is not a salaried employee of Lender to collect what You owe, the prevailing party will be entitled to reasonable attorney's fees, costs, and court costs, unless specifically prohibited by applicable law.

**19. Delay in Enforcing Rights; Changes to This Contract.** Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, Lender may extend the time for making some payments without extending others.

Lender may be required by state or federal law to change the terms and conditions of this Contract, and You agree to be bound by any document provided by Lender that implements those changes. Any change in terms of this Contract must be in writing and signed by Lender. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

**20. Statements.** Upon written request from You, Lender will provide You with a written statement of the date and amounts of payments and the total amount unpaid on this Contract.

**21. Monthly Statements.** Monthly statements may be provided as a courtesy to You. If You do not receive a monthly statement, it does not excuse Your obligation to make Your scheduled monthly payment.

**22. Applicable Law.** This Contract has been submitted for acceptance and is deemed to have been executed in Carson City, Nevada. Eaglemark Savings Bank is chartered and regulated by the State of Nevada Department of Business and Industry, Financial Institutions Division. You may contact them at P.O. Box 3239 Carson City, NV 89702 or call (775) 688-1730. Eaglemark Savings Bank is also regulated by the Federal Deposit Insurance Corporation and has the right under Federal law to export interest rates, fees and other types of credit charges based on the laws of the State of Nevada. Except to the extent specified elsewhere in this Contract, this Contract and Your account will be governed by the laws of the State of Nevada and applicable Federal law.

**23. Warranties Lender Disclaims. You understand that Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by Lender, covering the Vehicle.**

This provision does not affect any warranties covering the Vehicle which may be provided by the manufacturer of the Vehicle.

**24. Notice of Assignment.** Upon receipt and funding of this Contract by ESB, some or all of the rights in the Contract will automatically be assigned to Harley-Davidson Credit Corp., pursuant to the Master Assignment Agreement or Participation Agreement in effect between ESB and Harley-Davidson Credit Corp.

**25. Guarantors and Co-Obligors.** The holder of this Contract may share Your account information, including, but not limited to, non-public personal information, with any and all Guarantors and/or Co-Obligors under this Contract which may be the dealer identified on page one of this Contract.

**26. Dispute Resolution and Arbitration. Agreement to Arbitrate.**

**Military Lending Act Notice:** For loans not exempt from the Military Lending Act, this section in its entirety, does not apply if You are a Covered Borrower, as defined by 10 U.S.C. § 987 and 32 C.F.R. § 232.3(g) under the Military Lending Act, on the date You enter into and sign this Contract and for the period of time You are classified as a Covered Borrower.

**Any arbitration under this Contract will take place on an individual basis; class actions, class arbitrations, and representative actions are not permitted.**

**You expressly waive any right to have and arbitrate a class action and You will not be able to participate as a representative or member of any class of claimants ("Class Action Waiver").**

**You also agree that, by entering into this Contract, You and We each waive any right to a trial by jury.**

This arbitration provision relates to a transaction (or transactions) involving interstate commerce. The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern any and all Claims (defined below) between You (as well as your agents, heirs, and assigns) on the one hand, and ESB and/or any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand. The parties agree to arbitrate any and all claims, controversies, or disputes including but not limited to those arising out of or relating in any way to Your loan or account, this Contract, advertising or claims relating to this Contract, or the sale of this Contract, whether in contract, tort, statute, or otherwise, as well as recovery of any claim under this Contract (collectively "Claims"). Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before the American Arbitration Association ("AAA" or "Arbitration Forum"). You may obtain a copy of the rules by visiting their website.

The arbitration shall take place in the federal district in which You reside, unless another location is mutually agreed upon by the parties, or another jurisdiction is required to make this clause enforceable. The arbitrators shall be attorneys or retired judges selected in accordance with AAA rules. The arbitration award shall be in writing, and shall detail the factual and legal reasons for any award or findings.

An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction. If either party fails to abide by the rulings of the arbitrator, then the parties have the right to seek relief from a court of competent jurisdiction.

You and We retain the right to seek limited provisional remedies from a court (for example, We can seek and obtain a replevin order, or other order supporting repossession of the Vehicle, from a court); the remainder of the matter will then proceed to arbitration.

If any portion of this arbitration provision other than the Class Action Waiver is deemed invalid or unenforceable, the remaining portions of this arbitration provision shall remain valid and in force. If the Class Action Waiver shall be deemed invalid or unenforceable for any reason, the arbitration provision in this Contract shall be unenforceable. In the event of conflict or inconsistency between this arbitration provision and the other provisions of this Contract or any prior agreement, this arbitration provision shall govern. This provision shall survive the termination of any contractual agreement between You and Us.

## OTHER IMPORTANT AGREEMENTS (Continued)

**Costs**

If We initiate arbitration, We will pay the entire arbitration filing fee. If You initiate arbitration, We will reimburse you for the filing fee, unless the arbitrator decides that any of Your Claims are frivolous (using the standards set forth in Rule 11 of the Federal Rules of Civil Procedure) in which case We will reimburse You only one-half of the filing fee. We will also pay (or reimburse) the actual costs and fees imposed by the arbitrator, unless the arbitrator decides that any of Your Claims are frivolous (using the standards set forth in Rule 11 of the Federal Rules of Civil Procedure) in which case We will pay (or reimburse) only one-half of the actual costs and fees. Costs and fees for attorneys are addressed immediately below.

**Attorney Fees**

Unless the arbitrator decides that any of Your Claims are frivolous (using the standards set forth in Rule 11 of the Federal Rules of Civil Procedure), We cannot obtain attorney fees from You even if We prevail in the arbitration. However, in the event that the arbitrator decides that any one of Your Claims was frivolous, then the arbitrator can award Us reasonable attorney fees and costs. If the arbitrator decides that You have prevailed in the arbitration, then the arbitrator may award You reasonable attorney fees and costs You incurred.

**Arbitration Award**

If the arbitrator finds in Your favor on the merits of at least one Claim alleged by You, AND the arbitrator issues You an award that is greater than the latest offer We made to you AND either equal to or less than $10,000 then We will pay You $10,000, instead of the arbitrator's award, and We will pay Your attorney 1.5 times the amount of attorney fees and costs awarded to You by the arbitrator.

The arbitrator's award shall be final and binding upon the parties.

**Opt-out option**

You have the opportunity to opt out of this Arbitration Clause, but any request must be RECEIVED in writing by Us within sixty (60) days of the date of this Contract. To opt out, You may contact Us at (800) 699-2336 to request an opt-out form, OR you may also opt-out of this Arbitration Clause by sending a letter indicating Your choice to opt-out of this clause, and referencing Your name, address, and account number, to:

> Harley-Davidson Credit Corp.
> Arbitration Opt-Out
> PO Box 21947
> Carson City, NV 89706

If We do not **RECEIVE** Your **COMPLETED** opt-out form within the time set forth above, any attempt to opt out of this Arbitration Clause shall be void. If You do choose to opt-out, You understand that You will waive any protections or benefits provided under this clause, such as any benefits to You under the headings entitled "Costs," "Attorney Fees," or "Arbitration Award."

**27. Proceeds.** You hereby authorize and direct Lender to forward any and all proceeds of this Contract to the Dealer and others identified on the front of this Contract.

**28. Entire Agreement.** Unless You are a Covered Borrower and Your loan is not exempt from the Military Lending Act, this Contract represents the final and entire agreement between the parties, unless amended in writing and approved by Lender (e.g. GAP waiver). If any statement or representation conflicts with any term(s) in this Contract, the term(s) in this Contract shall prevail. Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. If You are a Covered Borrower and Your loan is not exempt from the Military Lending Act, then the terms of this Contract expressly include the "Notice to Covered Borrowers", which Lender provided to You in writing and in a form You can keep at or before the time You became obligated on this transaction.

If any provision of this Contract We have not identified is contrary to the rights and protections afforded to You by the Military Lending Act, including, but not limited to 32 C.F.R. § 232.8, or if any provision shall be found to be a violation of such protections, then the conflicting provisions or proscribed terms are inapplicable, and shall have no force or effect.

**29. Severability.** If a court or arbitrator with competent jurisdiction finds that any portion of this Contract is void or unenforceable for any reason, all other portions of this Contract shall remain in force. The foregoing shall not apply to the arbitration clause, above, which has its own severability provisions.

**30. Telephone Communications.** You agree that We may monitor and record telephone calls regarding this Contract to assure the quality of Our service. You consent to Our use of prerecorded/artificial voice messages and/or automatic telephone dialing devices to contact You in order to service or collect payments due under this Contract. You understand that Your consent to receive such prerecorded/artificial voice messages and/or automatic telephone dialing devices to contact You is bargained-for consideration for entering into this Contract. Your consent covers Our use of these contact methods to call, or send text messages to, any telephone number You provide to Us (or any telephone number We obtain via allowable methods under law, rule, or regulation). Moreover, You expressly consent to Our use of prerecorded/artificial voice messages and/or automatic telephone dialing devices to contact telephone numbers for which You may incur a charge, such as a number assigned to a cellular telephone service.

**31. Questions on Your Account.** To contact Lender about this account, call (800) 699-2336.

**32. Name and Address of Lender's Title Processor and Service Provider.** You hereby agree and acknowledge that Lender may use a third-party service provider to register and process Vehicle titles.

# Eaglemark Savings Bank

P.O. Box 22048
Carson City, NV 89721

 A subsidiary of Harley-Davidson Credit Corp.

---

**COLORADO RESIDENTS ONLY:** If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original creditor resulting from the consumer's purchase of guaranteed automobile protection.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**



Collateral Management Services  
9750 Goethe Road | Sacramento, CA 95827  
www.dealertrack.com

# Harley-Davidson Credit

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| | | **Financed Date** | 5/28/2020 |
| | | **Perfected Date** | 6/27/2020 |
| | | **Payoff Date** | |
| **Borrower 1** | PETERSON, NATHAN S | | |
| **Borrower 2** | MACDONALD, MEAGHAN K | **Dealer** | COLONIAL HARLEY-DAVIDSON |
| **Borrower Address** | | **Dealer Address** | 1701 TEMPLE PARKWAY PRINCE GEORGE, VA 23875 |

### Lienholder

| | |
|---|---|
| **Lienholder** | EAGLEMARK SAVINGS BANK |
| **Lienholder Address** | PO BOX 277940 SACRAMENTO, CA 95827 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1HD1KHC13LB642026 | **Issuance Date** | 6/26/2020 |
| **Title Number** | 1606174326 | **Received Date** | 6/27/2020 |
| **Title State** | VA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2020 | **Odometer Reading** | |
| **Make** | HD | **Branding** | |
| **Model** | | | |
| **Owner 1** | NATHAN SCOTT PETERSON | | |
| **Owner 2** | MEAGHAN K MACDONALD | | |
| **Owner Address** | | | |

**Printed:** Wednesday, October 5, 2022 12:47:51 PM PST